**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **RYAN LAW FIRM, LLP,** §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>**NEW YORK MARINE AND GENERAL** §<br>**INSURANCE COMPANY,** §<br>*Defendant* § | **Case No. 1:19-CV-629-RP** |

**ORDER AND REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion for Summary Judgment, filed October 29, 2019 (Dkt. 18); Plaintiff's Motion to Compel, filed June 16, 2020 (Dkt. 37); and the associated response and reply briefs. On April 8, 2020, the District Court referred the motions to the undersigned Magistrate Judge for resolution and report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.   Background**

This is an insurance coverage dispute between Plaintiff Ryan Law Firm, LLP ("Ryan Law"), a Texas limited liability partnership, and its malpractice insurance carrier, New York Marine and General Insurance Company ("NYM"), a New York corporation. NYM issued Lawyers Professional Liability Policy No. PL201500001078 to Ryan Law for the policy period July 8, 2015 to July 8, 2016 (the "Policy"), with a limit of liability of $5 million. Ryan Law alleges that NYM wrongfully failed to settle the Underlying Lawsuit.

In 2014, The Finish Line, Inc. ("Finish Line"), an Indiana corporation, retained Ryan Law to submit claims on Finish Line's behalf to the "Deepwater Horizon Claim Center" in the wake of the Deepwater Horizon oil rig explosion that occurred on April 20, 2010, in the Gulf of Mexico ("BP Oil Spill"). Dkt. 18-3 at 1. Finish Line alleges that it suffered economic losses to its stores as a result of the BP Oil Spill.

According to Finish Line, Ryan Law failed to timely file five claim forms for economic damage to more than 60 Finish Line stores, resulting in those claims being time-barred. In addition, Finish Line alleged that Ryan Law wrongfully outsourced its legal services to third parties without Finish Line's knowledge. On June 17, 2016, Finish Line filed the underlying lawsuit against Ryan Law and the associated third parties in Indiana state court, alleging one claim of legal malpractice and seeking an unspecified amount of damages. *See The Finish Line v. Ryan Law, et al.*, No 49D01-1606-PL-21894 (Sup. Ct. Ind. June 17, 2016) ("Underlying Lawsuit") (Dkt. 18-3).

On June 23, 2016, after Ryan Law notified NYM of the Underlying Lawsuit, NYM agreed to defend it in the lawsuit, and appointed Leslie Pollie of Kopkus Dolin PC as defense counsel.

On March 6, 2018, Finish Line filed its third amended complaint against Ryan Law, adding claims of negligence, fraud/deceit and attorney deceit, constructive fraud, breach of fiduciary duty, civil conspiracy, and damages for criminal deception and fraud. Dkt. 18-4. Finish Line also sought $1.1 million in damages, punitive damages, and treble damages. *Id.*

On March 23, 2018, NYM notified Ryan Law in a reservation of rights letter that fraud claims were not covered under the Policy, and that if "it is determined that the Ryan Law Firm engaged in dishonest, fraudulent, criminal or malicious acts or omissions, or deliberate misrepresentations, New York reserves the right to deny coverage for any damages arising out of such." Dkt. 18-5 at 4. NYM continued to defend Ryan law, subject to the reservation of rights with regard to the

indemnity coverage. NYM alleges that it "remained ready, willing, and able to defend Ryan Law through a final judgment, and in the event of an adverse judgment New York Marine was ready, willing, and able to pay any portion of the judgment that was covered under the Policy." Dkt. 18 at 7-8.

On November 1, 2018, the Indiana state court denied Ryan Law's motion for summary judgment on all of Finish Line's causes of action, finding that genuine issues of material fact existed. Dkt. 20-4 at 22. The state court also granted Finish Line's motion for partial summary judgment with regard to the Ryan Law's affirmative defenses of proximate cause, comparative fault, intervening/superseding cause, laches, and failure to mitigate. *Id.* 33.

Ryan Law alleges that after it received the trial court's order, it "engaged in settlement discussions with Finish Line to resolve the Malpractice Suit before the looming February 11, 2019 trial date." Dkt. 20 at 5. On December 21, 2018, Kory Ryan, Ryan Law's Founder and Managing Partner, notified NYM that "Finish Line is pushing for a [*redacted*][1] settlement from the law firm. If I can settle for [*redacted*], how much of that will [NYM] cover?" Dkt. 18-6 at 2. NYM contends that the amount that Finish Line was "pushing for" was a multiple of Finish Law's entire compensatory damage model. Thus, NYM informed Ryan Law that it "has not authorized you to negotiate on our behalf and, regardless, that figure is well in excess of what we and counsel evaluated this matter at. As you know we have discussed scheduling a mediation which we will attend to attempt to resolve for a reasonable figure." *Id.*

On January 16, 2019, Ryan Law's coverage counsel, Ernest Martin, sent NYM a letter demanding that NYM accept Finish Line's new settlement demand "immediately." Dkt. 18-9 at 1.

---

[1] Ryan Law claims that the settlement amount was "well within the Policy's limits." Dkt. 1-1 at 19. Because the amount is confidential, Ryan Law has redacted the actual dollar amount from the summary judgment evidence.

3

That same day, NYM responded, notifying Ryan Law that it would not pay the settlement demand (which NYM alleges had increased by 10% from Finish Line's previous offer) because it was unreasonable in that it was "far too high relative to the reasonable exposure." Dkt. 18-10 at 3, 18 at 8. NYM stated that it believed the maximum amount of exposure to Ryan Law would be $504,415, not $1,134,935.40, as Finish Line had alleged. *Id.* at 2. NYM added that "neither defense counsel nor you (nor even Plaintiff) have identified a damage model under any theory of recovery that presents exposure in excess of the remaining Policy limit." *Id.* at 4. In closing, it noted that "NYM remains committed to reaching a settlement of this matter that is commensurate with the realistic exposure to covered or potentially covered damages. I will call you shortly to discuss next steps." *Id.* at 4.

On January 18, 2019, NYM called Martin and advised him of the amount NYM would be willing to contribute toward a settlement. Dkt. 18-8 at 2. Ryan Law contends that the amount NYM was willing to contribute to the settlement of the case was unreasonable and "a mere fraction (11%) of the settlement demand." Dkt. 20 at 11. On January 19, 2019, Martin sent NYM an email notifying it that Ryan Law would "proceed with efforts to settle the case using your client's meager and inadequate contribution." Dkt. 18-11 at 2. On January 21, 2019, Ryan Law accepted Finish Line's settlement demand without NYM's consent. Dkt. 18-7 at 2.

On March 15, 2019, Ryan Law filed this coverage lawsuit against NYM in state court, seeking to recover the amount paid to Finish Line for the settlement. *See Ryan Law Firm v. New York Marine and General Ins. Co.,* No. D-1-GN-19-001477 (Dist. Ct. Travis County, Tex. Mar. 15, 2019). Plaintiff's First Amended Petition alleges breach of contract and violations of Chapter 541 of the Texas Insurance Code, and seeks monetary damages and attorney's fees. Dkt. 1-1 at 20-23.

On June 18, 2019, NYM removed this case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a), 1441(a). Dkt. 1.

In its Motion for Summary Judgment, NYM argues that it has no obligation to indemnify Ryan Law for the settlement it paid to Finish Line because Ryan Law materially breached the Policy by failing to obtain NYM's consent to the settlement. Ryan Law disagrees and argues that NYM did not have "unbridled discretion to deny a reasonable settlement demand within policy limits and expose its insured to a potentially large judgment at trial without any assurance that such an award would be covered." Dkt. 20 at 7.

In its Motion to Compel, Ryan Law seeks discovery of certain documents from NYM.

## II.    NYM's Motion for Summary Judgment

**A. Legal Standard**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B. The Parties' Arguments

NYM argues that it is entitled to summary judgment because "[t]he Policy required New York Marine's consent to any settlement as a condition precedent to any coverage, and Ryan Law's settlement over New York Marine's objection forecloses any recovery under the Policy as a matter of law." Dkt. 18 at 4. Ryan Law disagrees, contending that the consent to settlement provision did not give NYM the discretion to deny a reasonable settlement demand within the limits of the Policy. Dkt. 20 at 7. Ryan Law also argues that NYM must show that it was prejudiced by the breach of the notice of settlement provision.

The parties agree that Texas law applies in this case. Under Texas law, insurance policies are written contracts, and, as with other contracts, courts "interpret and enforce them according to settled rules of construction," and "must give the policy's words their plain meaning, without inserting additional provisions into the contract." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

6

*Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). Accordingly, the Court begins its analysis with the terms of the Policy.

**C.  The Policy**

The Policy provides that: "The Company shall have the right and duty to defend any suit against the Insured seeking Damages to which this insurance applies even if any of the allegations of the suit are groundless, false or fraudulent." Dkt. 18-2 at 6 § I. The Policy also grants NYM exclusive authority to accept or reject any settlement offers. Specifically, it contains the following consent to settlement provision:

> The Company shall also have the right to investigate any Claim and/or negotiate the settlement thereof, as it deems expedient, but the Company shall not commit the Insured to any settlement without its consent. . . . Furthermore, the Insured shall not assume any obligations, incur any costs, charges, or expenses or enter into any settlement without the Company's consent.

*Id.* at 6-7 § I. Similarly, the Policy also contains the following "conditions" for coverage:

> The Insured shall cooperate with the Company and, upon the Company's request, assist in making statements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of Damages with respect to which this insurance applies. . . . The Insured shall not, except at the Insured's own cost, voluntarily make any payments, admit liability, assume any obligation or incur any expense.
>
> ***
>
> A person or organization may bring a suit against the Company including, but not limited to, a suit to recover on an agreed settlement or on a final judgment against an Insured; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the Insured and the claimant or the claimant's legal representative.

*Id.* at 12-13 §§ IX(B), IX(E).

### D. Prejudice Is Required under Texas Law

Based on the undisputed facts before the Court, Ryan Law breached the Policy by entering into the settlement agreement with Finish Line without NYM's consent. *See Guar. Cty. Mut. Ins. Co. v. Kline*, 845 S.W.2d 810, 811 (Tex. 1992) (holding that insured's settlement with tortfeasor without insurer's consent violated the "settlement without consent" exclusion in his insurance contract); *Arnold v. Allstate Fire & Cas. Ins. Co.*, No. A-19-CV-00558-LY, 2019 WL 5102741, at *3 (W.D. Tex. Oct. 10, 2019) (noting that "Plaintiff was contractually obligated to obtain Allstate's consent to settle based on the terms of the Policy"). Although not entirely clear, Ryan Law appears to argue that it did not breach the Policy because "by issuing a reservation of rights letter, which created a conflict between New York Marine and Ryan Law," NYM lost its right to control the defense and Ryan Law did not have to receive NYM's consent. The Fifth Circuit has specifically rejected this argument. *See Motiva Enters., LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 385 (5th Cir. 2006) (holding that insured breached its policy by settling underlying suit without insurer's consent, "even though [insurer] reserved its right to contest coverage and therefore did not tender to [insured] an unqualified defense"). Thus, Ryan Law clearly breached the Policy.

NYM argues that because Ryan Law breached the consent-to-settle provision of the Policy, Texas law forecloses any right of recovery under the Policy as a matter of law. Ryan Law disagrees, arguing that Texas law requires NYM to show that it was prejudiced by the breach. The Court concludes that Ryan Law is correct.

In support of its argument that breach of the consent-to-settle provision forecloses any recovery under the Policy as a matter of law, and, therefore, that it need not show prejudice, NYM relies heavily on *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38 (Tex. 1998). NYM's reliance on *Maldonado* is misplaced, however, because that case did not involve violation of a consent-to-settle provision, but rather an "actual trial" condition to coverage.

8

In *Maldonado*, after the insurer rejected a settlement offer, the insured made a private agreement with the third-party victim before the trial began whereby the insured agreed to pay the victim $1 million from his personal assets, in return for the victim's promise not to collect on any later judgment against the insured. *Id.* at 39. The agreement further provided that after the insured recovered his $1 million payment from the insurer in a bad-faith lawsuit to be filed later, he and the victim would split evenly any remaining recovery. *Id.* At trial, the insured presented no evidence, did not cross-examination any witnesses, and did not present opening or closing arguments. *Id.* In essence, the entire trial consisted of the victim's witnesses' testimony, and a $2 million verdict was rendered in favor of the victim. *Id.* The insured then sought reimbursement from the insurer, which denied coverage because the insured had failed to satisfy the policy's "actual trial" condition, which required a "genuine contest of issues." *Id.* at 40. Since there was "no real contest of issues" at the sham trial, the Texas Supreme Court held that "this was not an 'actual trial' as contemplated by the insurance policy," and because an actual trial was a condition precedent of the policy, the insurer "cannot sue or recover on the policy." *Id.*

*Maldonado* is not controlling here because it did not involve a violation of a consent-to-settle provision and the court was never asked to determine whether the policy breach prejudiced the insurer. Texas Supreme Court opinions issued before and after *Maldonado*, moreover, refute NYM's argument that it is not required to show prejudice from the breach of the consent-to-settle provision.

For example, in *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994), the Texas Supreme Court held that "an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with the tortfeasor." The court based its holding on general principles of contract interpretation. "A

9

fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Id.* at 692. In order to determine whether a breach is material, courts must consider "the extent to which the non-breaching party will be deprived of the benefit that it could have reasonably anticipated from full performance." *Id.* at 693. Where the insurer is not prejudiced by the breach, the breach is not material, the insurer has not been deprived of the benefit of the bargain, and it should not be relieved of its obligation to provide coverage. *Id.* Thus, the court concluded that an insurer who is not prejudiced by an insured's settlement may not deny coverage under the policy. *Id.* Applying the materiality principle to the facts of *Hernandez*, the court found that the insured's failure to obtain the insurer's consent before settling with the tortfeasor failed to show prejudice because the insured had stipulated that it had not incurred any financial losses with regard to the settlement and its subrogation rights. *Id.* at 694. Accordingly, the court held that the insurer was not excused from its obligation to perform under the contact. *Id.*[2]

NYM attempts to distinguish *Hernandez* on its facts,[3] relying on the Fifth Circuit's 2006 opinion in *Motiva*, 445 F.3d at 386-87. In *Motiva*, the insured, relying on *Hernandez*, argued that even if it breached the consent-to-settlement clause, the insurer could not refuse to pay policy

---

[2] *Accord Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 294 (Tex. App.—Houston 2007, pet. denied) ("Although the *Hernandez* insured's settlement breached this provision, the Texas Supreme Court noted that (1) only a material breach voids coverage, and (2) a breach that was not prejudicial was not material."); *Progressive Cty. Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 816 (Tex. App.—San Antonio 2006, pet. denied) ("Even though there was no evidence that the condition precedent of cooperation was satisfied, Progressive will not escape liability unless it was prejudiced by the lack of cooperation."); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 192 (Tex. App.—Houston 2003, pet. denied) ("Texas law does not presume prejudice in settlement-without-consent cases.").

[3] NYM appears to argue that *Hernandez* should be limited to uninsured/underinsured motorist cases. Texas courts have rejected this argument. *See Coastal Ref. & Mktg.,* 218 S.W.3d at 294 ("*Hernandez* was expressly based on the fundamental principle of contract law that a material breach by one contracting party excuses performance by the other party, and an immaterial breach does not. . . . This principle is not limited to uninsured motorist policies.").

benefits unless it showed actual prejudice from the breach. Applying Texas precedent as it existed in 2006, the Fifth Circuit stated that "it is not entirely clear under Texas law, whether an insurer must demonstrate prejudice before it can avoid its obligations under a policy where the insured breaches a prompt-notice provision or a consent-to-settle provision." *Id.* The *Motiva* court relied in part on a Texas intermediate appellate court decision reversed three years later by the Texas Supreme Court: *PAJ Inc. v. Hanover Ins. Co.*, 170 S.W.3d 258 (Tex. App.—Dallas 2005), *rev'd*, 243 S.W.3d 630 (Tex. 2008). *PAJ* held that a notice provision was a condition precedent to coverage, breach of which did not require the insurer to show prejudice. *Motiva*, 445 F.3d at 386 n.5. Nonetheless, the Fifth Circuit assumed without deciding that "an insurer must show prejudice to avoid its obligations under the policy when the insured breaches the consent-to-settle provision." *Id.* at 386. The Court concluded that, "based on the summary judgment evidence in this case, we are satisfied that National Union suffered prejudice as a matter of law," reasoning:

> An insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement. When, as in this case, the insurer is not consulted about the settlement, the settlement is not tendered to it and the insurer has no opportunity to participate in or consent to the ultimate settlement decision, we conclude that the insurer is prejudiced as a matter of law. Under these circumstances the breach of the consent-to-settle provision in the policy precludes this action.

*Id.* at 386-87.

NYM's reliance on *Motiva* is misplaced because it did not hold that Texas law does not require a showing of prejudice from a breach of the Policy. Instead, the Fifth Circuit assumed that, under Texas law, an insured must show prejudice to avoid its obligations under the policy when the insured breaches a consent-to-settle provision.

NYM also relies on the Fifth Circuit's denial of Motiva's petition for rehearing, in which the court stated the following:

> As an alternate basis for our conclusion that Motiva cannot recover from National Union in this case, we point out that the holding by the Texas Supreme Court in *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex. 1998), has never been overruled or questioned by the Texas high court and is still good Texas law. *Maldonado* holds that a policy provision such as the one in National Union's policy that the insured has no liability unless "the amount you owe has been determined with our consent or by actual trial and final judgment," is a condition precedent to coverage.
>
> Because the insured, Motiva, seeks recovery of a sum paid in settlement without the consent of the insurer, National Union, Motiva failed to establish a condition precedent to coverage and *Maldonado* precludes Motiva's recovery in this case.

*Motiva Enterprises, L.L.C. v. St. Paul Fire & Marine Ins. Co.*, 457 F.3d 459, 460 (5th Cir. 2006).

After *Motiva* was decided, however, the Texas Supreme Court and the Fifth Circuit both issued opinions clarifying that Texas law requires an insurer to show that an insured's breach of a consent-to-settlement provision prejudiced the insurer. In *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008), reversing the decision relied on the by the Fifth Circuit in *Motiva*, the Texas Supreme Court relied on its previous decision in *Hernandez* to hold that an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay. The court noted that since its decision in *Hernandez*, "courts and several major treatises have acknowledged Texas as a state that has adopted a notice-prejudice rule." *Id.* at 634. The court relied on fundamental contract principles in holding that "an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." *Id.* at 636-37. The court further held, "as we did in *Hernandez [ ]*, that an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation." *Id.* at 631.

Five years later, in *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 754 (Tex. 2013), the Texas Supreme Court again held that an insured's violation of a consent-to-settlement

provision did not excuse the insurer from its liability under the policy unless the insurer was prejudiced by the settlement. The policy at issue prohibited the insured from "voluntarily making any payment, assuming any obligation, or incurring any expense without the insurer's consent." *Id.* at 754. In *Lennar*, the insured homebuilder had brought suit against its insurer, contending that the policy covered costs in repairing imitation stucco siding on homes that it had built. The homebuilder's insurer had refused to cooperate with the remediation program, preferring instead to wait until the homeowners sued. The insurer argued that because it had not consented to the homebuilder's remediation settlements, it was not obligated to indemnify the homebuilders. The trial court rejected this argument, finding that under *Hernandez*, the insurer could avoid liability under the policy only by showing that it was prejudiced by the settlements with the homeowners. The jury found that the insurer had not demonstrated that it was prejudiced by the settlements and rendered judgment for the homebuilders.

On appeal, the insurer argued that "[w]hen an insurer is not asked to adjust a claim, provide a defense, or be involved in negotiating a settlement, but is simply told it has to pay for a voluntary payment, the insurer has suffered prejudice as a matter of law." *Id.* at 755-56. The Texas Supreme Court rejected this argument, finding that the insurer's violation of the notice of consent provision "does not excuse [the insurer's] liability under the policy unless it was prejudiced by the settlements." *Id.* at 754. Relying on its previous decision in *Hernandez*, the court reasoned:

> Generally, one party's breach does not excuse the other's performance unless the breach is material. One factor in determining materiality is "the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance."
>
> \*\*\*
>
> Under *Hernandez*, an insurer establishes prejudice from a settlement to which it did not agree by showing that the insured's unilateral settlement was a material breach of the policy—that is, that it significantly impaired the insurer's position.

*Id.* at 755-56. Because the jury in the case had concluded that the insurer failed to establish that it was prejudiced by the settlements, the court held that the insurer was obligated to pay the homebuilders under the policy. *Id.* at 756. The court concluded: "To allow it to argue that Lennar cannot use those non-prejudicial settlements to establish the amount of its loss would plainly subvert the requirement that Markel show that Lennar's non-compliance was material." *Id.*

In addition, after its decision in *Motiva*, the Fifth Circuit issued several opinions indicating that Texas law requires the insurer to show prejudice from a violation of a consent-to-settlement or cooperation provision in order to avoid liability under the Policy. *See, e.g.*, *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 345 (5th Cir. 2012) (reasoning that, "in order for an insured's breach to defeat coverage, the breach must prejudice the insurer in some tangible way") (citing *PAJ*, 243 S.W.3d at 636-37); *see also Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 600 F. App'x 230, 236 (5th Cir. 2015) (*Berkley II*) (acknowledging that the court must determine whether the insurer was prejudiced by insufficient notice);[4] *Trumble Steel Erectors, Inc. v. Moss*, 304 F. App'x 236, 239 (5th Cir. 2008) ("Under Texas law, when an insurance policy requires that the policyholder notify its insurer of any claim or suit as soon as practicable, the policyholder's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."); *In re Oil Spill by Oil Rig DEEPWATER HORIZON*, No. MDL 2179, 2012 WL 3548036, at *13 (E.D. La. Aug. 16, 2012) (rejecting insurer's reliance on *Motiva* in support of its argument that it need not show prejudice).

---

[4] NYM attempts to rely on certain statements in *Berkley II* to support its argument that prejudice is not required. The court, however, merely stated that: "*Lennar* did not issue a broad pronouncement that prejudice must always be considered a question of fact." 600 F. App'x at 237. The court did not rule that a breach of a notice provision would always show prejudice as a matter of law. *See United States v. Miles*, 838 F.3d 621, 628 (5th Cir. 2016) (quoting *Lennar* and noting that "[m]ateriality is accordingly an issue of fact under Texas law").

14

More recently, after the Texas Supreme Court issued *Lennar* and *Berkley II*, the Fifth Circuit analyzed whether the insurer had shown prejudice from a breach of a cooperation clause in an insurance contract in *Foreman v. Acceptance Indem. Co.*, 730 F. App'x 191, 197 (5th Cir. 2018). In concluding that the evidence was sufficient to show that the insurer was prejudiced by the violation of the cooperation clause, the court noted that "[t]he Texas Supreme Court 'imposed the prejudice requirement as a logical result of the rule that a party's breach of contract excuses the other party's performance only if the initial breach is material.'" *Id.* at 197 n.15 (quoting *Lennar*, 413 S.W.3d at 763). The court concluded that "the jury's prejudice finding affirms that AIC met this 'prejudice requirement' and indicates that [the] breach was material, so AIC's obligation to perform is excused." *Id.* at 197. Thus, the court required the insurer to show a material breach and prejudice.

Based on the foregoing, the Court concludes that Texas law requires an insurer to show that the insured's breach of a consent-to-settlement provision prejudiced the insurer to avoid liability under the policy.

### E. Lack of Prejudice to NYM

NYM argues that it was prejudiced as a matter of law by Ryan Law's breach of the notice-of-consent provision because "Ryan Law unilaterally entered into a settlement over New York Martine's objection and deprived New York Marine of the right to defend Ryan Law through trial and the opportunity to obtain a far more favorable result." Dkt. 18 at 17. NYM, however, has not come forward with any summary judgment evidence demonstrating that it was prejudiced from the breach or that it would have obtained a more favorable result. "The mere fact that the insurer owes money that it does not wish to pay does not constitute prejudice as a matter of law." *Comsys Info. Tech.*, 130 S.W.3d at 192. NYM's contention, like the insurer's argument in *Lennar*, essentially is that if NYM had been involved in the final settlement negotiations, it would have

received a better result. 413 S.W.3d at 757. As the *Lennar* court found, this is a question of fact, not of law. *Id.; see also Miles*, 838 F.3d at 628. There is no evidence that Finish Line was willing to settle the case for a lower amount. *See Coastal Ref. & Mktg.*, 218 S.W.3d at 292 (finding that insurer failed to show prejudice where it failed to come forward with any evidence that the underlying plaintiff would have settled the case for a lower amount); *Comsys Info. Tech.*, 130 S.W.3d at 192 (holding that insurer failed to come forward with sufficient evidence to be entitled to summary judgment where insurer merely argued that it was deprived of the opportunity to evaluate the settlement and verify that it was covered by the policy).

Because NYM has not come forward with any evidence that it was prejudiced from the breach of the consent-to-settle provision, it is not entitled to summary judgment on Ryan Law's breach of contract claim.[5] Similarly, because NYM's only argument for dismissal of Ryan Law's bad faith claims under the Texas Insurance Code is based on the alleged failure of the breach of contract claim, NYM's motion for summary judgment on this basis should be denied.

### III.    Ryan Law's Motion to Compel

Ryan Law asks the Court to compel NYM to produce documents responsive to Requests for Production Nos. 20, 21, and 22 in Plaintiff's Second Set of Requests for Production. Ryan Law seeks documents related to NYM's evaluation of the Underlying Lawsuit in the form of (1) NYM's claim for reinsurance relating to the Underlying Lawsuit, and (2) NYM's claim reserves for this matter. NYM argues that the documents are not relevant and that Ryan Law is foreclosed from recovering on the Policy as a matter of law.

---

[5] Because NYM has moved for summary judgment only on the basis that it is not liable under the Policy because of the alleged material breach and prejudice, the Court need not address the reasonableness of the settlement demand under *Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Com. App. 1929).

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004). Information within the scope of discovery need not be admissible in evidence to be discoverable. FED. R. CIV. P. 26(b)(1).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)).

Based on these standards, the Court finds that Ryan Law's requests for production are reasonably calculated to lead to the discovery of admissible evidence, particularly in light of the Court's ruling on the motion for summary judgment. As noted, information within the scope of discovery need not be admissible to be discoverable. FED. R. CIV. P. 26(b)(1). The Court finds, however, that a second deposition of Mark Vidone is not necessary and a fee award is not justified.

Accordingly, Ryan Law's Motion to Compel (Dkt. 37) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the Motion to Compel NYM to respond to Requests for Production Nos. 20, 21 and 22 in Plaintiffs Second Set of Requests for Production. The Court **DENIES** all other relief requested in the Motion to Compel.

## IV. Order and Recommendation

Based on the foregoing, the undersigned **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Compel (Dkt. 37) as stated above.

The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Defendant New York Marine and General Insurance Company's Motion for Summary Judgment (Dkt. 18).

The Court **FURTHER RECOMMENDS** that the Clerk **REMOVE** this case from the Magistrate Court's docket and return it to the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 16, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE