UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **RYAN LAW FIRM, LLP,** *Plaintiff* § § § | |
| **v.** § § | **CIVIL NO. A-19-CV-629-RP** |
| **NEW YORK MARINE AND GENERAL INSURANCE COMPANY,** *Defendant* § § § § | |

**ORDER**

Before the Court are Plaintiff's Motion to Strike Expert Testimony of Chris Martin (Dkt. 83), filed February 9, 2021; Defendant's Motion to Exclude Expert Testimony of Dina Cox (Dkt. 90), filed February 16, 2021; and the associated response and reply briefs. The District Court referred the motions to the undersigned for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.   Background**

This is an insurance coverage dispute between Plaintiff Ryan Law Firm, LLP ("Ryan Law") and its malpractice insurance carrier, New York Marine and General Insurance Company ("NYM"). NYM issued Lawyers Professional Liability Policy No. PL201500001078 to Ryan Law for the policy period July 8, 2015 to July 8, 2016 (the "Policy"), with a liability limit of $5 million. Ryan Law alleges that NYM wrongfully failed to settle a malpractice lawsuit and seeks to recover the amount paid to the plaintiff in that lawsuit. Ryan Law's Original Petition alleges breach of contract in failing to fund the settlement in the underlying malpractice suit and statutory bad faith claims under Chapter 541 of the Texas Insurance Code. Dkt. 1-1 at 20-23.

On November 3, 2020, the District Court adopted the undersigned Magistrate Judge's Report and Recommendation and dismissed Ryan Law's statutory bad faith claims under the Texas Insurance Code. Dkt. 80. A jury trial is scheduled to commence on April 5, 2021. Dkt. 68.

Ryan Law now moves to strike Chris Martin as a testifying expert witnesses, and NYM moves to exclude Dina Cox as a testifying rebuttal expert witness.

## II.   Legal Standards

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that scientific testimony or evidence is not only relevant, but also reliable. Subsequently, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness

> qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting FED. R. EVID. 702). The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that (1) the expert is qualified; (2) the evidence is relevant; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594-96). The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony. *Sims v. Kia*

*Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). Because the *Daubert* test focuses on the underlying theory on which the opinion is based, the proponent of expert testimony need not prove that the expert's testimony is correct, but rather that the testimony is reliable. *Moore*, 151 F.3d at 276. This determination of reliability includes a preliminary determination "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

Trial courts ordinarily apply four factors when considering the reliability of scientific evidence: (1) whether the technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Id.* This test of reliability is flexible, and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III.   Analysis

The Court addresses each of the motions in turn.

**A. Ryan Law's Motion to Strike**

On April 17, 2020, NYM designated Christopher Martin as a testifying expert witness "to provide expert opinions regarding a multitude of issues" arising out of the underlying malpractice

lawsuit. Dkt. 83-1. Specifically, Martin provided opinions as to (1) the traditional legal malpractice claims process; (2) the defense and indemnity of legal malpractice claims involving both covered and non-covered claims; (3) indemnity implications of an insured's decision to settle a claim before final judgment; (4) the licensing of adjusters; and (5) the factual and legal allegations made in this suit. Martin concluded that: "It is my professional opinion that there is no evidence I have seen in my review of this file of any Insurance Code violations, violations of any common law standards or any other improper conduct by New York Marine." *Id.* at 17.

A few months after Martin issued his report, the District Court dismissed Ryan Law's bad faith claims. *See* November 3, 2020 Order (Dkt. 80). Shortly thereafter, the parties deposed Ryan Law's defense attorneys in the underlying lawsuit.

On January 28, 2021, Martin issued a Supplemental Expert Report, purportedly to

> supplement my expert report dated April 15, 2020 in light of additional documents provided to me since I drafted my initial report including recent rulings by the Court on multiple different issues as well as new sworn testimony [from Ryan Law's defense counsel's depositions] regarding issues which I raised in my first report.

Dkt. 83-2 at 2. Martin's Supplemental Expert Report addressed (1) whether Ryan Law's settlement of the underlying case was reasonable; (2) Ryan Law's allocation between covered and uncovered amounts, including non-covered fraud claims and any reputational and business concerns; and (3) the actual prejudice to NYM due to Ryan Law's settlement of the case. *Id.* at 1-13.

Ryan Law argues that the Court should strike Martin's Original Expert Report because it no longer is relevant to the issues currently pending in the case. Ryan Law argues that Martin's Supplemental Expert Report also should be stricken because it is untimely and offers new opinions masquerading as supplemental opinions. Alternatively, Ryan Law contends that Martin's opinions in the Supplemental Expert Report are irrelevant to the issues before the Court and are based on speculation and legal conclusions.

1. **The Original Expert Report Is Relevant**

Ryan Law argues that Martin's Original Expert Report no longer is relevant to any issues or claims in this case because the report focuses on whether NYM acted in bad faith, and those claims have been dismissed. While Martin's Original Expert Report found that NYM's handling of the underlying lawsuit did not constitute "bad faith," the Report also included the following opinions:

- It is also my opinion that Ryan Law's settlement was unreasonably high, premature and unnecessary. If Ryan Law had not done so, it is highly likely New York Marine, through Ryan Law's defense counsel, would have negotiated a lower settlement before the start of trial which would have resulted in the dismissal of all claims against Ryan Law, the payment of the entire settlement by New York Marine and the dismissal of the litigation without Ryan Law having to pay any of its own money.

- [T]he premature and excessive settlement by Ryan Law was unreasonable and New York Marine was reasonable in refusing to reimbursement Ryan Law for its voluntary settlement with Finish Line.

- If Ryan Law had not panicked, the case would have most likely settled for a more reasonable sum before the start of trial. Even if it didn't settle, Ryan Law would have been fully protected through trial and on appeal for all covered losses.

- New York Marine was reasonable in its defense of the case, its handling of the liability and damage allegations against Ryan Law, its retention of defense counsel, its issuance of a reservation of rights letter, its subsequent coverage positions, its rejection of unreasonably high settlement demands by Finish Line, its willingness to proceed to mediation before trial, and its failure to provide consent to Ryan Law to settle for an unreasonable amount.

- Based on the known law and facts, the decision of Ryan Law to settle the claims against it for the sums it settled for under a strategy to get all of the settlement funds back from New York Marine was a poor strategic choice, not justified by the law or the facts here, and not reasonable under the circumstances.

- Ryan Law's willingness to settle with Finish Line for $2.75 million does not appear reasonable under the circumstances and New York Marine was reasonable in not agreeing to reimburse such settlement.

- It is my opinion that Ryan Law, through its private counsel, attempted to bolster its reasons for asking New York Marine to pay for a settlement which included non-covered punitive damages based on intentional torts by adding a new allegation of "gross negligence" after the settlement was agreed to by Finish Line and Ryan Law.

- It is my professional opinion that the Fourth Amended Complaint was orchestrated by Ryan Law and its private counsel to attempt to set up Ryan Law's professional liability carrier for contractual and extra-contractual claims now asserted in this suit.

- Ryan Law never informed New York Marine how much, if any, it was willing to contribute to any settlement with Finish Line for the non-covered claims asserted against it.

*Id.* at 9-10, 14-15 & 17. The Court finds that these opinions are relevant to the sole remaining claim in this lawsuit: whether NYM breached the contract in failing to fund the settlement in the underlying malpractice lawsuit. *See Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) ("[E]xpert testimony must be relevant . . . in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.").

**2. The Supplemental Expert Report Is Timely**

Ryan Law also argues that the Court should strike Martin's Supplemental Expert Report because it is untimely under the Scheduling Order. Ryan Law contends that Martin's Supplemental Expert Report is a "new" expert report "masquerading" as a supplemental report because it offers new opinions not previously disclosed. Dkt. 83 at 4. Accordingly, Ryan Law contends that NYM was required to disclose this new expert report by the deadline in the Scheduling Order to designate testifying experts, which was April 17, 2020. Dkt. 33.

Martin's Supplemental Expert Report is not a new report. As noted, Martin supplemented his Original Expert Report after the District Court issued some substantive rulings in the case, and after defense counsel in the underlying lawsuit were deposed. Under Rule 26(e)(2), a party has a duty to supplement any expert reports disclosed under Rule 26(a)(2)(B) "both to information

6

included in the report and to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2). Martin's Supplemental Expert Report addresses (1) whether Ryan Law's settlement of the underlying case was reasonable; (2) the allocation between covered and uncovered amounts under the Policy, including non-covered fraud claims and any reputational and business concerns; and (3) the actual prejudice to NYM due to Ryan Law's settlement of the case. Dkt. 83-2 at 1-13. All of these issues also were addressed in Martin's Original Expert Report. Dkt. 83-1 at 9-10, 14-15 & 17. Accordingly, Martin's Supplemental Expert Report is not an entirely new report that had to be filed by April 17, 2020. Instead, the report had to be filed by the deadline in Rule 26(e)(2).

Rule 26(e)(2) provides that a supplement to an expert report "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(2). Here, the parties' pretrial disclosures were due on March 6, 2021. *See* FED. R. CIV. P. 26(a)(3) (providing that pretrial disclosures "must be made at least 30 days before trial"). Because NYM filed the Supplemental Expert Report before March 6, 2021, it was timely.

### 3. Speculation

Ryan Law further argues that the Court should strike Martin's Supplemental Expert Report because Martin's opinions as to the reasonableness of the settlement and whether NYM was prejudiced by the settlement are speculative. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Court finds that Ryan

7

Law's arguments that Martin's opinions are speculative are the proper subject of cross-examination and not a basis for disqualification. *Id.*

### 4. Allocation

Finally, Ryan Law argues that Martin's Supplemental Expert Report should be stricken because his opinions as to allocation are irrelevant and improper legal conclusions. District courts have "considerable leeway" to decide what facts are relevant to the apportionment decision. *Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 657 (5th Cir. 2008). As the Fifth Circuit has stated:

> It is important to remember that the goal of the allocation trial is not to conduct a full blown retrial of the merits of the underlying plaintiff's claims, but rather to determine what portion of the settlement was reasonably intended to concern claims covered by the policy at issue. The question is how the parties viewed the merits of the plaintiff's claims at the time of the settlement. To determine a reasonable allocation from the viewpoint of the settling insurer (or insured), all information influencing the settlement decision is potentially relevant.

*Id.* 656-57.

The Court finds that Martin's opinions as to allocation are potentially relevant to the issues in this case. Ryan Law is free to raise any objections based on legal conclusions on cross examination or in motion *in limine*.

### 5. Conclusion

Based on the foregoing, Ryan Law's Motion to Strike Expert Testimony of Chris Martin (Dkt. 83) is **DENIED**.

### B. NYM's Motion to Exclude

Ryan Law has designated Dina Cox as an expert to testify as to the reasonableness of the settlement in the underlying malpractice suit. NYM argues that Cox's testimony should be

excluded because it is unreliable and will confuse the jury because she "cherry-picks certain facts and ignores other crucial evidence." Dkt. 90 at 2.

In essence, NYM argues that the Court should strike Cox's testimony because it conflicts with NYM's testifying witnesses and expert opinions. This is not a proper basis on which to exclude expert testimony. In determining the admissibility of expert testimony, a district court should approach its task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo*, 826 F.2d at 422. Thus, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility "and should be left for the jury's consideration." *Id.* Accordingly, NYM's objections to Cox's testimony can be raised on cross-examination and are not proper objections to expert testimony.

NYM also argues that Cox's testimony should be excluded because it mistakenly includes prejudgment interest in her settlement valuation and miscalculates attorneys' fees. In response, Ryan Law contends that Cox corrected her opinions during her deposition. NYM does not dispute this in its reply brief. *See* Dkt. 93. Regardless, NYM is free to raise any objections to Cox's testimony during cross-examination.

Based on the foregoing, NYM's Motion to Exclude Expert Testimony of Dina Cox (Dkt. 90) is **DENIED**.

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

**SIGNED** on March 3, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE