IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RYAN LAW FIRM, LLP, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § § | CIVIL ACTION NO. 1:19-cv-629-RP |
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, | | |
| Defendant. | | |

## PLAINTIFF RYAN LAW FIRM, LLP'S MOTION FOR NEW TRIAL

Respectfully submitted,

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.
State Bar No. 13063300
*ernest.martin@haynesboone.com*
Natalie DuBose
State Bar No. 24077481
*Natalie.dubose@haynesboone.com*
Andrew W. Guthrie
State Bar No. 24078606
*andrew.guthrie@haynesboone.com*
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:  (214) 651-5000
Telecopier:  (214) 541-5940

ATTORNEYS FOR PLAINTIFF
RYAN LAW FIRM, LLP.

# TABLE OF CONTENTS

I.  BASIS FOR NEW TRIAL ............................................................................................. 1

II. ARGUMENT AND AUTHORITY ............................................................................. 2

    A.    The standard for ordering a new trial. .................................................................. 2

    B.    The jury's finding that NYM did not breach the policy is against the great weight of the evidence. ........................................................................................ 3

        1.    The Court properly instructed the jury that NYM breached the Policy if it failed to pay for any reasonable amount of the settlement. ................... 3

        2.    There was no evidence to support the jury's no-breach finding—because everyone agreed that some portion of the settlement was reasonable. ....... 5

III. PRAYER ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carr v. Wal-Mart Stores, Inc.*,
   312 F.3d 667 (5th Cir. 2002) ..................................................................................................3

*Channel 20, Inc. v. World Wide Towers Servs., Inc.*,
   607 F. Supp. 551 (S.D. Tex. 1985) ..........................................................................................8

*Crankshaw v. City of Elgin*,
   No. 1:18-CV-75-RP, 2020 WL 889169 (W.D. Tex. Feb. 24, 2020) ........................................4

*Novedea Sys., Inc. v. Colaberry, Inc.*,
   No. 6:20-CV-180-JDK, 2022 WL 4360541 (E.D. Tex. Sept. 20, 2022) ..................................8

*Peterson v. Wilson*,
   141 F.3d 573 (5th Cir. 1998) ..................................................................................................3

*Seibert v. Jackson Cnty., Mississippi*,
   851 F.3d 430 (5th Cir. 2017) ..................................................................................................3

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) ...............................................................................................3, 9

*Weeks v. Angelone*,
   528 U.S. 225 (2000) ................................................................................................................4

**Statutes and Rules**

FED. R. CIV. P. 50(a) ......................................................................................................................4

FED. R. CIV. P. 59(a) ...................................................................................................................1, 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| RYAN LAW FIRM, LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-629-RP |
| | § | |
| NEW YORK MARINE AND GENERAL | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF RYAN LAW FIRM, LLP'S MOTION FOR NEW TRIAL

Plaintiff Ryan Law Firm, LLP ("Ryan Law") files this motion for new trial under Rule 59(a) because the jury verdict was against the great weight of the evidence, as demonstrated below.

### I.    BASIS FOR NEW TRIAL

Ryan Law does not file this motion lightly, as no court (or litigant) wants to re-try a case. Ryan Law also recognizes that in the vast majority of new-trial motions based on the great weight of the evidence, the jury probably just resolved a legitimate evidentiary dispute against the losing party. But this is not one of those cases. A new trial is required here because there was no evidence to support the jury's no-breach finding under the instructions that the jury received from the Court.

To briefly recap, this Court entered a take-nothing judgment on March 8, 2023, giving effect to the jury's February 17, 2023 verdict. *See* Dkt. 157, 156. After a weeklong trial of this insurance coverage dispute, the jury found in Question No. 1 that New York Marine ("NYM") did not breach its insurance policy—in any way—through its undisputed failure to pay even a dime toward the underlying Finish Line settlement. Dkt. 156. Just on its face, that finding is suspect in light of the Court's accompanying instructions, which properly explained that NYM had an

obligation under the Policy "to pay for *any amount* of the settlement if Ryan Law proves it is reasonable." Dkt. 150 at 7 (Instruction No. 6, emphasis added).

But what makes the jury's finding truly erroneous is the evidence that was presented at trial: because *all* of that evidence showed that at least some portion of the settlement was reasonable. Ryan Law's witnesses testified that the reasonable settlement value was $2.75 million given the probability that the claims against it in Indiana would succeed and the amount of likely damages to be awarded by an Indiana jury. NYM's witnesses certainly disagreed with that *valuation*, but what's most important for present purposes is that they all testified that the reasonable settlement value was still somewhere between $300,000 and $600,000. Nobody testified that the reasonable settlement value was $0—but that's the only way the jury could have answered "No" to Question No. 1 under the Court's instructions.

In other words, it is clear from the trial record that the jury was either confused about the Court's instructions or disregarded them—because there is no evidence to support the jury's finding that there was no breach at all. Under the great weight of the evidence, NYM breached the policy to some extent and the jury should have proceeded to determine *the amount* of the settlement that was reasonable and the amount by which NYM was prejudiced, if any. Because the jury did not do so, the only just remedy is a new trial. Ryan Law is sensitive to the fact that a new trial may well require further expenditure of the Court's and the parties' limited resources; but that is what the law demands. Ryan Law respectfully requests that this Court order a new trial.

## II. ARGUMENT AND AUTHORITY

**A. The standard for ordering a new trial.**

The Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). Among other such reasons that are not implicated here, this broad authority extends to cases where a jury's verdict is against "the

great weight of the evidence . . . even if there is substantial evidence to support it." *Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998) (internal quotations omitted). A new trial is certainly appropriate when there is "an absolute absence of evidence to support the jury's verdict." *Seibert v. Jackson Cnty., Miss.*, 851 F.3d 430, 439 (5th Cir. 2017) (internal quotations omitted).

In ruling on a great-weight challenge like this, "the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). While the Court cannot substitute its opinion for the jury's, "if the trial judge is not satisfied with the verdict of the jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial." *Id.* (internal quotations omitted); *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002) (same). This is just such a case because the great weight of the evidence here—indeed all of the evidence at trial—weighs against the jury's erroneous conclusion that NYM did not breach the Policy in any way. *See, e.g., Carr*, 312 F.3d at 672 (affirming determination that jury's finding was against the great weight of the evidence because "[t]he evidence presented at trial strongly indicate[d] that" plaintiff had proven the elements of its claim and defendant "has not pointed to any concrete evidence contradicting [plaintiff's] assertions").

**B.     The jury's finding that NYM did not breach the policy is against the great weight of the evidence.**

    **1.     The Court properly instructed the jury that NYM breached the Policy if it failed to pay for any reasonable amount of the settlement.**

The Court's instructions to the jury on breach of contract were simple and straightforward after several matter-of-law rulings that narrowed down the coverage issues in dispute. Before trial, the Court correctly found that NYM had not timely pled any policy exclusions and so could not defeat coverage on that basis. *See, e.g.,* Dkt. 135 at 3. Then, at the close of evidence, the Court correctly held that the Finish Line settlement satisfied all the requirements of the insuring

agreement and was therefore covered as a matter of law under the terms of the policy. *See* Ex. 5 (Trial Tr. vol. 5 at 3:3-12) ("I have granted plaintiff's Rule 50(a) motion in part substantially for the reasons stated in the motion. I find that no reasonable jury could conclude that Ryan Law's settlement was not under the policy coverage grant as New York Marine has waived its fraud exclusion defense. I find that the policy which included both professional services and the failure to render professional services unambiguously encompasses Ryan Law's failure to timely submit the Deepwater Horizon claim forms and its use of another law firm to provide those services."). The only question left on breach-of-contract liability was reasonableness.

So, unlike many other insurance coverage cases, the jury instructions barely contemplated the possibility of non-coverage. The Court instructed the jury, in simple terms, that "[u]nder the Policy, New York Marine is required to pay for ***any amount*** of the settlement if Ryan Law proves it is reasonable." Dkt. 150 at 7 (Instruction No. 6, emphasis added). The Court also explained that the jury could not consider the fraud exclusion for purposes of resolving Ryan Law's claims. *Id.* at 8 (Instruction No. 9). In accordance with those instructions, Question No. 1 on the verdict form simply asked the jury to decide whether NYM "fail[ed] to comply with the Policy by failing to fund ***any part*** of the $2.75 million Finish Line settlement." Dkt. 156 (Verdict Form) (emphasis added). The jury answered "No" to that simple question and thus did not move on to determine the amount of a reasonable settlement in Question No. 2.

In effect, then—and under a literal reading of the Court's instructions—the jury concluded that ***no*** amount of the settlement was reasonable (*i.e.*, that the case had a $0 settlement value) because it found that NYM did not breach the policy in any way. *See Crankshaw v. City of Elgin*, No. 1:18-CV-75-RP, 2020 WL 889169, at *6 (W.D. Tex. Feb. 24, 2020) (Pitman, J.) ("A jury is presumed to follow its instructions.") (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)).

### 2. There was no evidence to support the jury's no-breach finding—because everyone agreed that some portion of the settlement was reasonable.

The jury's finding cannot stand. Not only is it against the great weight of the evidence presented at trial, but indeed it is against all of the evidence—there is no evidence in the record upon which the jury's no-breach conclusion could be based under a proper reading of the Court's instructions. While there was abundant evidence that the entire $2.75 million was reasonable, there was no evidence to suggest that the settlement value was $0. A new trial is required.

Each of NYM's witnesses—to the extent they offered any opinion on the value of the settlement at all—all valued the Finish Line settlement at between $300,000 to $600,000:

| Witness | Testimony |
|---|---|
| Marc Vidone (NYM's Claims Adjuster) | • "Q. Okay. At that point in time, what did you value the case at? A. At -- subsequent to the summary judgment order? Q. Yeah. A. It -- the value, our value did increase. It was approximately 300-ish. Q. 300-ish? A. 300,000." Ex. 3 (Trial Tr. vol. 3 at 10:20-11:2) |
| | • "Q. What kind of settlement did you think you were able to get? A. ***Reasonable value of this case was $300,000*** . . . ." *Id.* at 48:16-18 (emphasis added). |
| | • "Q. The most that you valued that concern at was 300,000-ish? A. That was our value, yes. Q. Okay. Did your value ever increase from that? A. No. That was our value. Q. So to this day, the value you've placed on the claim against Ryan Law is 300,000-ish. A. Yes." *Id.* at 172:13-20. |
| | • "Q. Okay. You said before 300,000-ish. So what is it? Is it 300 or is it something more than 300? A. Well, it's not an exact science. If we were negotiating and we needed a few extra dollars to settle the matter, we may have. I can't say how this would have played out at a mediation or -- but it was 300,000-ish, yes. Potentially a little more if we needed to. ***Q. Do you believe that there is a range that would be reasonable in connection with the case against Ryan Law? A. We evaluated it 300,000-ish, yes. That's what we valued it as. Q. That's a number. What I'm asking is, did you consider a range? A. Around $300,000. No. I don't have a range.*** Q. Nothing higher? A. Yes, I said potentially something higher. Q. What would that be? A. I can't tell you that. If we were at a mediation and if it could have settled for three and a quarter, 300,000, 25. We were going to contribute." *Id.* at 185:10-186:4 (emphasis added). |
| JoAnne McGovern | • "Q. And so, your opinion at the time was that $300,000 was a reasonable settlement value for the claims against Ryan Law? A. Correct. That's my |

| Witness | Testimony |
|---|---|
| (NYM's former VP of Claims) | recollection. Yes." *Id.* at 78:21-24.<br><br>• "A. . . . *the settlement value of the claim at that time particular point in time was $300,000*." *Id.* at 159:10-12 (emphasis added). |
| Travis Montgomery | • "A. *I think we were talking -- I think 600,000 was the optimal -- plaintiff's optimal settlement value is how it was referred to*. So that number that's included in this same report is the number that would have been – was being referenced there." Ex. 2 (Trial Tr. Vol. 2) at 123:3-7 (emphasis added).<br><br>• "A. I don't know that we were in a position to tell Mr. Ryan what a good settlement would be." *Id.* at 151:17-18.<br><br>• "Q. And for Doug Sigel, did you ever have any conversations about a settlement value of the case? A. Other than any that might be reflected in the written reports that were provided to him, I am not aware of having any conversations with him myself via telephone or otherwise. Q. And what about Dea McCart, same question, did you ever have any conversations with her about the settlement value of the case? A. No. Not with Ms. McCart. Certainly not." *Id.* at 152:9-18.<br><br>• "Q. . . . did you ever actually talk to Kory Ryan about the settlement value of the case? A. Not that I recall." *Id.* at 153:19-22. |
| Chris Martin | • "Q. So regarding the lawyers that have testified in this case, in your opinion, who had a better grasp of what the reasonable settlement value was? A. Ms. Pollie. *Q. And you agree with her assessment of the reasonable settlement value? A. Totally. The Ryan Law firm, I think at best, had a 25 to 33 percent exposure*. . . ." Ex. 3 (Trial Tr. vol. 3) at 240:5-12 (emphasis added).<br><br>• "Q. Okay. Also, I think I heard you say that Leslie Pollie has the best assessment of a reasonable settlement value. You said that according to her, Ryan Law's exposure was about a third. That's what I heard you say. Wrote that down. I think that's what you said; is that correct? A. Over time, yes, it started -- actually started out at 25 percent, then went to a third and went up." Ex. 4 (Trial Tr. vol. 4) at 13:25-14:7. |
| Ricardo Cedillo | • "Q. . . . have you had a chance to review your deposition testimony recently in preparation for this trial? A. I've been trying a lawsuit, so no. I did not get to read my deposition recently. Q. Okay. And so, you and I had a -- sort of a round and round and round discussion about the question about reasonableness, and one of the questions I asked you was whether or not you were offering an opinion about whether the $2.75 million was reasonable and you responded, I do not have an opinion on what a reasonable settlement of this case was. At 2.75 million or any number north or south of that, that wasn't my job. Is that different than the opinion that you're offering today? Or you're maintaining that? A. No. I think |

| Witness | Testimony |
|---|---|
| | that's consistent what I've told you. I don't think any lawyer can come in and say it's reasonable to pay 2.75 because a jury most assuredly would have given that number. I think that pick any number higher than that, any number lower than that, my opinion's still the same. No lawyer can say that that number is reasonable because you're predicting something that is not properly predictable." *Id.* at 40:14-41:11. |

On the other hand, Ryan Law's witnesses—including Kory Ryan, Andy Hull and Dina Cox—testified that the settlement value of $2.75 million was reasonable:

| Witness | Testimony |
|---|---|
| Kory Ryan | "A. . . . we knew our worst day was 4.5 million and we looked at our best day, which *was never zero* because the court found as a matter of law, we owed a duty to Finish Line, the claims we missed. We're on the hook for that. There's no getting around that. And we took that best day number at 1.1 million. . . . So I looked at those numbers and said, where is it going to land, right? Is Finish Line going to get their best day at 4.5? Not likely. Could happen. Are we going to get our best day? Could happen. Not likely. So if you look at 4.5 million to the 1.1, right in the middle is 2.75 million. So I settled this case *2.75 million, which I felt was very reasonable*." Ex. 1 (Trial Tr. vol. 1) at 113:10-114:17 (emphasis added). |
| Andy Hull | "Q. . . . Once the $2.75 million demand was made at any point before trial, were you going to accept anything less than the 2.75? A. No." Ex. 2 (Trial Tr. vol. 2) at 85:6-10. |
| Dina Cox | "A. . . . It [the settlement] was reasonable. It was a discount on -- a significant discount on full liability. It was a significant discount on the maximum verdict potential, which was $4.5 million. Ryan Law had no expert on the standard of care, so they would have no one at trial supporting their conduct from an expert point of view. . . . So for all of those reasons, because they were going to lose, they were going to lose big, *the $2.75 million was reasonable and it's what it took*. I mean, Finish Line was staunch in its settlement position. Andy Hull was not bluffing when he was, you know, giving escalating demands going up, up, up and putting tight deadlines on them. He put his money where his mouth was. He wasn't bluffing. And I think the closer they got to trial, the higher that price would have been. And then, had they started trial and made Andy and Finish Line spend all this money to get ready, it would have just either been impossible to settle or would have been much more expensive to settle." *Id.* at 194:3-195:21 (emphasis added). |

But what's most important for this motion is that no witness offered any reasonable settlement value less than $300,000. As shown above, even NYM's own witnesses concluded that

the settlement value was between $300,000 and $600,000. To support a no-breach finding in Question No. 1, the jury would have had to find that no portion of the settlement was reasonable (*i.e.*, that the settlement value was $0). But there was no such evidence. It is no answer to suggest, as NYM did in closing, that there was no breach because NYM offered to pay $300,000 if Ryan Law would sign a release of liability for all claims. *See* Ex. 5 (Trial Tr. vol. 5) at 60:3-11. That argument does not align with the policy, the Court's instructions, or Question No. 1. There is no instruction or basis in the policy to find non-liability based on NYM's conditional and unaccepted settlement offer. Moreover, Question No. 1 asks the jury whether NYM "fail[ed] to comply with the Policy by failing to *fund* any part of the $2.75 million Finish Line settlement." Dkt. 156 (emphasis added). NYM cannot escape liability when it did not actually fund any part of the settlement.

Because there is no evidence from any witness to support a finding that no portion of the settlement was reasonable, the jury erroneously concluded—against the great weight of the evidence—that NYM did not breach the policy in Question No. 1. *See also, e.g., Novedea Sys., Inc. v. Colaberry, Inc.*, No. 6:20-CV-180-JDK, 2022 WL 4360541, at *6 (E.D. Tex. Sept. 20, 2022) (granting a new trial where there was no evidence that alleged redistribution of shares ever occurred and where there was substantial evidence that the redistribution did not occur); *Channel 20, Inc. v. World Wide Towers Servs., Inc.*, 607 F. Supp. 551, 558 (S.D. Tex. 1985) (granting a new trial where jury awarded zero damages for conscious pain and suffering even though the great weight of the evidence showed that decedents were conscious for at least part of their fall and where defendants did not produce any evidence to the contrary). And because there is no evidence upon which the verdict can stand, the Court has a duty to set aside the verdict and order a new trial. *Smith*, 773 F.2d at 613 ("[I]f the trial judge is not satisfied with the verdict of a jury, he has the

right—and indeed the duty—to set the verdict aside and order a new trial." (internal quotations omitted)).

### III. PRAYER

For all these reasons, Ryan Law respectfully requests that the Court order a new trial and grant all other and further relief for which Ryan Law is entitled.

Respectfully submitted,

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.
State Bar No. 13063300
*ernest.martin@haynesboone.com*
Natalie DuBose
State Bar No. 24077481
*natalie.dubose@haynesboone.com*
Andrew W. Guthrie
State Bar No. 24078606
*andrew.guthrie@haynesboone.com*
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 541-5940

ATTORNEYS FOR PLAINTIFF
RYAN LAW FIRM, LLP.

## CERTIFICATE OF SERVICE

This is to certify that on April 5, 2023 a true and correct copy of the above and foregoing document was electronically served upon the following counsel of record as authorized by the Federal Rules of Civil Procedure:

Blair Dancy
Zach Bowman
Cain & Skarnulis PLLC
400 W. 15th Street, Suite 900
Austin, Texas 78701
Phone: 512-474-5000
Fax: 512-477-5011

*Attorney for Defendant NYM Insurance Company*

                                                    */s/ Natalie DuBose*
                                                    Natalie DuBose

4883-3268-8987 v.3