IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RYAN LAW FIRM, LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 1:19-CV-629-RP |
| NEW YORK MARINE AND GENERAL | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Plaintiff Ryan Law Firm, LLP's ("Ryan Law") motion for a new trial, (Dkt. 159), and Defendant New York Marine and General Insurance Company's ("NYM") Motion for Leave to File a Sur-Reply, (Dkt. 163). Having considered the record, the parties' briefing, and the relevant law, the Court will deny both motions.

**I.  BACKGROUND**

This is an insurance coverage dispute between Ryan Law and its malpractice insurance carrier, NYM. NYM issued Lawyers Professional Liability Policy No. PL201500001078 2016 (the "Policy") to Ryan Law for the policy period July 8, 2015 to July 8, 2016, with a limit of liability of $5 million.

**A. The Policy**

The Policy provides that: "The Company shall have the right and duty to defend any suit against the Insured seeking Damages to which this insurance applies even if any of the allegations of the suit are groundless, false or fraudulent." (Dkt. 18-2 at 6 § I). The Policy also grants NYM exclusive authority to accept or reject any settlement offers. Specifically, it contains the following consent to settlement provision:

> The Company shall also have the right to investigate any Claim and/or negotiate the settlement thereof, as it deems expedient, but the Company shall not commit the Insured to any settlement without its consent. . . . Furthermore, the Insured shall not assume any obligations, incur any costs, charges, or expenses or enter into any settlement without the Company's consent.

(*Id.* at 6-7 § I). Similarly, the Policy also contains the following "conditions" for coverage:

> The Insured shall cooperate with the Company and, upon the Company's request, assist in making statements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of Damages with respect to which this insurance applies. . . . The Insured shall not, except at the Insured's own cost, voluntarily make any payments, admit liability, assume any obligation or incur any expense.
>
> ***
>
> A person or organization may bring a suit against the Company including, but not limited to, a suit to recover on an agreed settlement or on a final judgment against an Insured; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the Insured and the claimant or the claimant's legal representative.

(*Id.* at 12-13 §§ IX(B), IX(E)).

## B. Factual Background

This dispute begins with the April 20, 2010 Deepwater Horizon oil spill in the Gulf of Mexico. (R. & R., Dkt. 69, at 3). The Finish Line, Inc. ("Finish Line"), an Indiana Corporation that operates retail shoe stores, retained Ryan Law to submit claims on its behalf to the Deepwater Horizon Claim Center. (*Id.*). However, Ryan Law subcontracted the work to another lawyer, Jayesh Patel, and ultimately failed to timely file five claim forms, which then became time barred. (*Id.*). On June 17, 2016, Finish Line filed the underlying lawsuit against Ryan Law in Indiana state court, alleging legal malpractice and seeking an unspecified amount of damages. (*Id.*). *See The Finish Line v. Ryan Law, et al.*, No 49D01-1606-PL-21894 (Sup. Ct. Ind. June 17, 2016) ("Underlying Lawsuit")

2

(Dkt. 18-3). A week later, Ryan Law notified NYM of the underlying lawsuit, who appointed Leslie Pollie of Kopkus Dolin PC as defense counsel. (*Id.*).

On March 6, 2018, Finish Line filed its third amended complaint against Ryan Law, adding claims for negligence, fraud/deceit and attorney deceit, constructive fraud, breach of fiduciary duty, civil conspiracy, and damages for criminal deception and fraud. Finish Line sought $1.1 million in damages, punitive damages, and treble damages. (*Id.*). On March 23, 2018, NYM notified Ryan Law in a reservation of rights letter that its fraud claims were not covered under the policy, and that it reserved the ability to deny coverage of the fraudulent claims. (*Id.* at 4). However, NYM maintains that it was still ready and willing to defend Ryan Law at trial and defend any portion of the judgment that was covered by the policy. (*Id.*). On November 1, 2018, the Indiana state court denied Ryan Law's motion for summary judgment and granted Finish Line's motion for partial summary judgment on Ryan Law's affirmative defenses. (*Id.*).

Ryan Law then began to independently engage in settlement discussions to resolve the underlying lawsuit with Finish Line before the February 2019 trial date. Kory Ryan, Ryan Law's Founder and Managing Partner, notified NYM that Finish Line was pushing for a settlement, and asked how much NYM was willing to cover. (*Id.*). NYM informed Ryan Law that it had "not authorized [Ryan Law] to negotiate on [its] behalf" and that the figure Ryan Law suggested "is well in excess of what we and counsel evaluated in this matter at." (*Id.*). Ryan Law's coverage counsel, Ernest Martin, sent NYM a letter on January 26, 2019, demanding it accept the settlement. (*Id.*). NYM refused, stating that the settlement was "far too high relative to the reasonable exposure." (*Id.* at 5). NYM continued to state that it would attempt to reach a settlement amount "that is commensurate with the realistic exposure to covered or potentially covered damages." (*Id.*).

Ryan Law continued to negotiate on its own and reached a figure of $2.75 million with Finish Line, believing that there was a substantial risk of large jury damages for fraud and punitive

damages. NYM told Martin that it would offer to cover $300,000 of a settlement in exchange for a release of all liability, and Martin emailed NYM to notify them that it would "proceed with efforts to settle the case using your client's meager and inadequate contribution." (*Id.*). On January 21, 2019, Ryan Law accepted the settlement without NYM's consent.

On March 5, 2019, Ryan Law filed this coverage lawsuit in state court, seeking to recover from NYM the amount that it had paid to Finish Line for the settlement. (*Id.*). NYM filed its answer in state court and pled its affirmative defenses but did not plead any coverage exclusion defense. (Answer, Dkt. 1-1, at 27). NYM then removed the case to federal court. (Dkt. 1). NYM twice moved for summary judgment. First, NYM moved for summary judgment on Ryan Law's breach of contract claim, arguing that it had no obligation to indemnify Ryan Law because Ryan Law materially breached the contract by failing to obtain NYM's consent to the settlement. (Mot. Summ. J., Dkt. 18). The Court rejected that argument, noting that a material issue of fact existed as to whether NYM was prejudiced by the failure to obtain consent for the settlement. (R. & R., Dkt. 42; Order, Dkt. 60). NYM moved again for partial summary judgment on Ryan Law's statutory bad faith and *Stowers* claims. (Mot. Summ. J., Dkt. 41); *Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved). This time, the Court agreed, and granted summary judgment on Ryan Law's bad faith and *Stowers* claims. (R. & R., Dkt. 69; Order, Dkt. 80).

During the course of litigation, NYM realized it had not pled any affirmative defense of policy exclusion in its answer, even though Finish Line's fraud claims fell outside the scope of the Policy's coverage. On October 13, 2020, NYM filed a motion for leave to file an amended answer, hoping to assert a coverage exclusion defense. (Mot., Dkt. 75). The Court denied the motion, noting that the motion came nearly a year after the amended pleadings deadline had passed. (Order, Dkt. 81). On January 11, 2023, NYM moved for reconsideration of the Court's order, which was denied at the final pretrial conference as untimely. (Mot., Dkt. 121; Minute Entry, Dkt. 127). The Court

ruled that NYM could introduce the fraud exclusion issue as to whether the underlying settlement was reasonable, but not as to whether NYM was prejudiced by the settlement or what portion of the settlement should be allocated to covered expenses.

The case proceeded to a jury trial from February 10 to February 17, 2023. At the close of Ryan Law's case, NYM moved for a directed verdict on the basis that, because Ryan Law's settlement with Finish Line disclaimed liability, NYM was not obligated to cover the settlement. (Mot., Dkt. 141). The Court denied the motion on the record. Separately on the record, Ryan Law moved for judgment as a matter of law on two grounds: that NYM could not show prejudice and that the settlement fell within the Policy's coverage.[1] (Tr. Vol. 2, Dkt. 146, at 184). The Court granted the Rule 50(a) motion in part, holding that no reasonable jury could conclude that Ryan Law's settlement was not under the policy coverage grant because NYM had waived the coverage exclusion defense and that the policy included the failure to render professional services. (Tr., Dkt. 159-5, at 3). Accordingly, the jury instructions included a line that NYM "is required to pay for any amount of the settlement if Ryan Law proves it is reasonable." (Jury Charge, Dkt. 150, at 7).

As to prejudice, Ryan Law argued that the jury could only speculate as to whether NYM could have obtained a more favorable settlement and therefore could not show prejudice. The Court denied the motion, finding that a question of fact still existed as to whether NYM could have obtained a more favorable settlement. (Tr. Vol. 2, Dkt. 146, at 184). Accordingly, it included a jury instruction, based on the Texas Pattern Jury Charge,[2] saying,

> "[NYM's] failure to comply with the Policy is excused if [NYM] shows that it was prejudiced by Ryan Law's settlement. [NYM] was prejudiced only if it shows, by a preponderance of the evidence, that Finish Line would have accepted less than $2.75 million to settle the case after

---

[1] In particular, Ryan Law moved (and obtained) judgment as a matter of law on this point largely because NYM had waived the fraud exclusion defense.

[2] Tex. Pattern Jury Charges—Business, Consumer, Insurance & Employment § 101.58 (2022) (Instruction on Plaintiff's Material Breach When Only One Party Claims a Material Breach).

> further settlement negotiations or the Indiana jury would have
> rendered a verdict of less than $2.75 million at trial."

(Jury Charge, Dkt. 150, at 8).

The verdict form included two questions:

> 1. Did NYM fail to comply with the Policy by failing to fund any part
> of the $2.75 million Finish Line Settlement?" and
> 2. What sum of money . . . would fairly compensate Ryan Law for
> [NYM's] failure to fund any part of the Finish Line Settlement? You
> may include in your consideration whether the settlement was
> reasonable and whether New York Marine was prejudiced by Ryan
> Law's failure to obtain consent before entering into the settlement.

(Verdict, Dkt. 156).

The jury deliberated and ultimately answered "No" to the first question. (*Id.*). Accordingly, it

did not reach the second question. The Court entered final judgment in favor of NYM. (Final J.,

Dkt. 157).

Ryan Law then filed the instant motion for a new trial under Rule 59(a). (Dkt. 159). Ryan

Law argues that the jury's verdict is necessarily against the great weight of the evidence because even

NYM had agreed that a $300,000 settlement would have been reasonable. (*Id.*). Relying on the jury

instruction that NYM "is required to pay for any amount of the settlement if Ryan Law proves it is

reasonable," Ryan Law argues that no evidence supported a no-breach finding in favor of NYM.

(*Id.*).

In response, NYM argues that it did perform under the policy by offering $300,000 towards

the settlement, that it was prejudiced by the settlement and therefore excused from performance,

and that the underlying trial would likely have resulted in a zero-dollar judgment. (Def.'s Resp., Dkt.

161).

## II. LEGAL STANDARD

The Court may grant a new trial "for any reason for which a new trial has heretofore been

granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "New trials should not be granted

on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 300 (5th Cir. 2005). "In other words, the movant must show 'an absolute absence of evidence to support the jury's verdict.'" *Seibert v. Jackson Cnty., Mississippi*, 851 F.3d 430, 439 (5th Cir. 2017). A court may not "substitute its opinion for the jury's," but "[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted).

## III. DISCUSSION

The central question is whether the jury went against the great weight of the evidence by answering "No" to Question 1, which asked "Did NYM fail to comply with the Policy by failing to fund any part of the $2.75 million Finish Line Settlement?" (Mot. New Trial, Dkt. 159; Verdict, Dkt. 156). In particular, Ryan Law contends that the jury's verdict cannot be sustained in light of the Court's specific instruction that NYM "is required to pay for any amount of the settlement if Ryan Law proves it is reasonable." (Jury Charge, Dkt. 150, at 7; Mot. New Trial, Dkt. 159). NYM makes three arguments as to how the jury could have found no breach of duty despite the Court's instruction regarding NYM's obligation to pay. (Resp., Dkt. 161).

### A. Offer to Pay $300,000

First, NYM suggests that it did not breach the Policy because it offered Ryan Law $300,000 towards the settlement in exchange for a full release of liability (even though NYM never actually tendered the money). (Def.'s Resp., Dkt. 161-6, at 3). This argument runs contrary to the jury instructions, which stated that NYM was "required to pay for any amount of the settlement if Ryan Law proves it is reasonable." (Jury Charge, Dkt. 150, at 7). A party does not fulfill contractual duties by conditioning their preexisting obligations on new amendments. *See Pasley v. Am. Sur. Co. of N. Y.*, 253 S.W.2d 86, 89 (Tex. App.—Dallas 1952, writ dism'd) (finding that a carrier's release requested in

connection with its payments which were already owed under the policy was invalid because no additional consideration had been given for the release); *cf. Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 426 (Tex. 2004) (holding that statutory interest should be assessed "if an insurer's tender of partial payment of a claim is not unconditional"); *Dupree v. Boniuk Interests, Ltd.*, 472 S.W.3d 355, 367 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("A promise to fulfill a pre-existing obligation cannot serve as new consideration for an amendment to a contract."). NYM's offer, combined with new release terms, could not have fulfilled its contractual obligations, and therefore could not have sustained the jury's answer of "No" to Question 1.

### B. Offsets

Second, NYM suggests that the jury's verdict was reasonable because Finish Line settled with two entities related to Ryan Law—Jayesh Patel and Ryan, LLC. (Def.'s Resp., Dkt. 161, at 6–7). The evidence presented at trial is likely insufficient to justify this finding. JoAnne McGovern, Vice President of Claims for NYM, testified that the damages "would have been a verdict in that $600,000 range, and then, that would have been reduced likely in some fashion . . . to $300,000 range attributable to Ryan Law." (Tr. Vol. 3, Dkt. 161-3, at 122:4). And Travis Montgomery, one of Ryan Law's NYM-appointed defense counsel in the underlying suit, testified that "Ryan Law will not be entitled to a credit but will be entitled to have the jury split fault among Ryan Law and non-parties" and, "As long as this case remains a Comparative Fault Act case, we will never be entitled to discovery of the settlement amounts." (Montgomery Email, Dkt. 161-6, at 3). The finding that NYM had no obligation to fund the settlement because of potential offsets not part of the underlying suit is contradicted by the testimony of both sides' witnesses and therefore against the great weight of the evidence.

Moreover, a complete offset would not have obviated NYM's contractual obligations. NYM would still have had to fund the underlying suit. If the amounts were precise offsets, then the jury

could have answered Question 2 with "$0." But the obligation to fund the suit would still have existed. The jury would have had to find that a reasonable settlement was $0, in light of the offsets, not that NYM had no obligation to pay whatsoever.

## C. Prejudice

Third, NYM argues that the jury's verdict was supported by the evidence because NYM demonstrated prejudice. Here, the Court agrees with NYM. The jury charge contained an exception for NYM's obligation to perform if NYM could show it was prejudiced by Ryan Law's failure to obtain consent for its Finish Line settlement. (*See* Jury Charge, Dkt. 150, at 8 ("[NYM's] failure to comply with the Policy is excused if [NYM] shows that it was prejudiced by Ryan Law's settlement.")). Because the instruction excused NYM's obligation to pay if it could show prejudice, it follows that NYM would not have breached the Policy by failing to pay if it had shown prejudice.

Although a jury could likely have found either way regarding prejudice, there was not a complete absence of evidence showing that NYM suffered prejudice from Ryan Law's breach. Mark Vidone, NYM's claim adjuster, testified that NYM was prejudiced by its inability to take the case to trial or to attempt settlement. (Def.'s Resp., Dkt. 161, at 5). JoAnne McGovern testified that Kory Ryan's negotiations made their ability to negotiate with Finish Line more difficult. (*Id.*). The Court, moreover, rejected Ryan Law's motion for judgment as a matter of law precisely on this point, finding that a reasonable jury could have determined NYM was prejudiced by the breach. (Tr. Vol. 2, Dkt. 146, at 184). In sum, there are sufficient facts to sustain a jury's finding that NYM suffered prejudice from Ryan Law's breach.

The core remaining issue is not whether NYM suffered prejudice, but what the legal effect of that prejudice should be. Since its second summary judgment order, this Court has proceeded under the holding that a showing of prejudice would have discharged NYM's obligation to perform. (R. & R., Dkt. 42, at 10; Order, Dkt. 60). The reasoning in the summary judgment order was

relatively straightforward: "A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994); *Motiva Enterprises, LLC v. St. Paul Fire and Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006) ("An insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement."); *see also* (R. & R., Dkt. 42; Order, Dkt. 60). The breach must be material, meaning that the insurer must suffer prejudice from the failure to obtain consent. *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 294 (Tex. App.—Houston 2007, pet. denied). As a result, the Court found that if NYM could identify a way in which it was prejudiced by Ryan Law's breach, it could avoid its obligation to perform under the contract. (R. & R., Dkt. 42, at 15 ("[T]he Court concludes that Texas law requires an insurer to show that the insured's breach of a consent-to-settlement provision prejudiced the insurer to avoid liability under the policy.")).

In its motion for a new trial, Ryan Law argues that prejudice goes to Question 2 on the verdict form—what amount of money would compensate Ryan Law for NYM's breach. (Pl.'s Reply, Dkt. 162, at 5–6). But this argument runs contrary to the jury instructions. (Jury Charge, Dkt. 150, at 8 ("[NYM's] failure to comply with the Policy is excused if [NYM] shows that it was prejudiced by Ryan Law's settlement.")). If NYM showed that it was prejudiced, then it "is discharged or excused from any obligation to perform." *Hernandez*, 875 S.W.2d at 692; *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) ("[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). Prejudice therefore goes to Question 1 and NYM's obligation to pay altogether. Because Ryan Law breached the policy, and the jury found the breach to be material, NYM's obligation to pay was excused. *See Interstate Fire & Cas. Co. v. Catholic Diocese of El Paso*, No. EP-12-CV-00221-DCG, 2014 WL 1117284, at *17 (W.D. Tex. Mar. 19, 2014) (insurer was not in breach

until amount due could be determined), *aff'd*, 622 Fed. Appx. 418 (5th Cir. 2015); *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 754-55 (Tex. 2013).

At a broader level, Ryan Law's strongest argument is that its settlement above a reasonable value should not excuse NYM's obligation to pay what *was* reasonable. NYM offered to pay Ryan Law $300,000 for a release of liability for all claims. Its own estimates of a fair settlement were between $300,00 and $600,000. Ryan Law ended up paying Finish Line $2.75 million. NYM can show it would be prejudiced by a settlement that far exceeded its estimates of a reasonable settlement amount. But it is paradoxical that NYM would be prejudiced by the high settlement amount that, in reality, saved it from having to pay $300,000.

The central problem is that, when an insured settles without consent for an excessive amount, the insurer is only truly prejudiced as to the excess—the insurer should not be able to claim monetary prejudice as to the amount it would have been willing to settle the case at. Yet because NYM showed some prejudice from Ryan Law's breach, Texas law and Fifth Circuit precedent appears to suggest that it is excused even from paying the settlement amount it had deemed to be reasonable. (R. & R., Dkt. 42, at 8–15 (discussing prejudice and citing cases)), *Motiva Enterprises*, 445 F.3d at 386. Indeed, the Texas Pattern Jury Charge, which formed the basis for the Court's instruction on prejudice, states that "Failure to comply by Don Davis is excused by Paul Payne's previous failure to comply with a material obligation of the same agreement." Tex. Pattern Jury Charges—Business, Consumer, Insurance & Employment § 101.58 (2022). This language suggests that prejudice is a complete, not partial, bar to recovery.

The end result is unintuitive, but the Court is bound by precedent on the prejudice, as well as its own summary judgment ruling and jury instructions. *F.D.I.C. v. McFarland*, 243 F.3d 876, 884 (5th Cir. 2001) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.")

11

(internal quotations omitted). Because this Court has previously held that prejudice is a complete excuse for performance, which it included in the jury instructions based off Texas's pattern jury charges, it cannot revisit that holding now.

As a result, the Court finds that there was sufficient evidence to support a finding of prejudice, and that prejudice constituted a complete excuse of NYM's performance under the policy. Accordingly, the jury did not err in determining that NYM did not breach the policy by refusing to fund any part of the settlement.

## IV. CONCLUSION

For the reasons discussed above, Ryan Law's motion, (Dkt. 159), is **DENIED**. The motion for leave to file a sur-reply, (Dkt. 163), is **DENIED**.[3]

**SIGNED** on October 12, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[3] Contrary to NYM's arguments, Ryan Law's reply brief does not raise substantially new arguments that would warrant a sur-reply. *See, e.g.*, *Sidbury v. Dunn & Bradstreet Emerging Bus. Corp.*, No. 1:19-CV-865-RP, 2020 WL 10758104, at *1 (W.D. Tex. May 27, 2020) (sur-replies are "highly disfavored").